## Grenell's Appeal.

*Public officers—Compensation—Deputies and clerks in offices of courts—Salary board—Appeals—Act of June 29, 1923.*

1. Salary boards in counties of the sixth class, under section 4 of the Act of June 29, 1923, P. L. 944, cannot fix and designate a lump sum to be paid for "clerk hire" under the direction of the prothonotary; the appropriation must be a fixed and specific salary to a designated person.

2. Under section 5 of the act, no county officers can appeal in behalf of a clerk dissatisfied with the amount allowed by the salary board; such clerk being obliged to appeal for himself.

Appeal from action of Salary Board. Motion to dismiss appeal. C. P. Bradford Co., Feb. T., 1924, No. 204.

From the record it appeared that the appeal was in the following form:

"Now, Jan. 14, 1924, L. T. Grenell, Prothonotary of the Court of Common Pleas and Clerk of the Court of Oyer and Terminer and Quarter Sessions in and for Bradford County, Pennsylvania, appeals from the action of the Salary Board of said County of Bradford, in fixing and determining for the year 1924 the number of Deputies and Clerks in the said office of the Prothonotary and Clerk of the Courts of Common Pleas, Oyer and Terminer and Quarter Sessions in and for said County of Bradford, as follows: Deputies, one; clerks, none; and from the action of said Salary Board in fixing and determining the amount of salary to be paid to the Deputies and Clerks in said offices at One Thousand Two Hundred Dollars per year."

*A. C. Fanning* and *J. W. Beaman*, for appellant.

*R. A. Mercur*, for Salary Board, appellee.

MAXWELL, P. J., March 3, 1924.—This case came on for hearing before the court on Feb. 20 and 21, 1924.

The proceedings in this matter are under the Act of June 29, 1923, P. L. 944, "relating to salaries, compensation, bonds, offices and supplies of certain county officers, their deputies and clerks, in counties of the sixth class."

Section 3 of the said act reads as follows:

"Section 3. Each of said officers shall appoint and may dismiss the deputies and clerks of his office."

Sections 4 and 5 of said act read as follows:

"Section 4. All the officers whose salaries are fixed by this act, and their several deputies and clerks authorized by the salary board, shall be paid for their services by fixed and specific salaries, which shall be a charge upon the treasury of the county. Such salaries shall be paid semi-monthly on the second and fourth Mondays of the month succeeding that in which the services were rendered.

"Section 5. The salary board in all counties of the sixth class, which shall be composed of the county commissioners and the county treasurer, shall fix and determine annually the number and salaries to be paid to the clerks and deputies required for the proper discharge of business in the office of the county officers whose salaries are fixed by this act. Any such county officer, deputy or clerk dissatisfied with amount of salary allowed by the salary board

4 D. & C.

may appeal from the action of such board to the Court of Common Pleas of the county, which court shall, after hearing, make an order fixing the salaries of such appointees."

The offices of Prothonotary and Clerk of the Courts of Oyer and Terminer and Quarter Sessions of the Peace require some one in the office all the time during business hours who is fully qualified and equipped to handle the business of the several courts in a safe business way, with accuracy and with dispatch, who is capable of making and keeping the records correctly.

A blunder or a mistake made in these offices by any clerk might prove serious to any party who has business to transact in any one or all of the said offices.

Mr. L. T. Grenell, the present incumbent, has had four years' experience in the offices of Prothonotary and Clerk of the Courts of Oyer and Terminer and Quarter Sessions of the Peace under his present deputy. Therefore, he ought to know how to run the offices and keep the records.

The duties of the office of Prothonotary, including that of Clerk of the Court of Oyer and Terminer and Quarter Sessions, are various and numerous, and as the offices are for the convenience and accommodation of the public, a sufficient force of help should be employed, and kept employed, to do the work and perform the duties required to the satisfaction of the public.

The evidence would indicate, and it is a fact within the knowledge of the court, that when court is in session the prothonotary or, in his absence, the deputy should be in attendance in court to empanel the juries, swear witnesses, file papers, keep the court minutes, and should be present all the time during court.

We have four regular terms of court, consisting of three weeks each term. We have four weeks of argument court and grand jury work of one week each term. This makes sixteen weeks of court each year. We sometimes have an extra week of court.

When court is in session and the prothonotary or his deputy is in court, there should be two persons in the office to wait on the customers, furnish information and attend properly to the work of the office. This, we think, is conceded in the testimony.

The evidence on the part of the appellant establishes the facts that the salary of Miss Marian D. Fellbush, Deputy Prothonotary, should be not less than $1500, and some witnesses fixed the amount of her salary as worth at least $2400, and this evidence is not denied by the salary board.

There should be one clerk in addition to the deputy, at a reasonable salary, at least part of the time, in order that the work may be expeditiously and efficiently carried on to the accommodation of the public.

The appellee says that they fixed the salary of the deputy prothonotary at the same as she had been receiving prior to the first Monday in January, 1924, while working as deputy under Mr. Grenell during his preceding term.

The salary board say that Mr. Grenell, in his statement to the county commissioners, attached to the answer of appellee, did not ask for any clerk in addition to his deputy, but only asked the salary board for an appropriation to be made by said salary board, to be used in paying for extra clerk hire, not exceeding $500 a year, which the board thought they could not do.

Mr. Grenell's reply to the statement of the salary board is that Miss Fellbush, as his deputy, was underpaid by him, and that he intended and expected to raise her salary, at the beginning of his second term, to $125 per month before he knew of any change of law. During the last year of 1923 he paid to his son, Volney T. Grenell, approximately $500 for extra clerk hire and

services in running his said offices, and that his application to the salary board was specific and sufficient to cover the services of a clerk, otherwise it would be necessary to hire a clerk for the full year.

No evidence was taken on the part of the appellee, except the testimony of the members of the salary board.

Section 4 of the Act of June 29, 1923, P. L. 944, provides that "all the officers whose salaries are fixed by this act, and their several *deputies and clerks* authorized by the salary board, shall be paid for their services by *fixed and specific salaries,* which shall be a charge upon the treasury of the county and shall be paid semi-monthly."

Section 5 of said act provides that the salary board "*shall fix and determine annually* the number and the salaries to be paid to the clerks and deputies required for the proper discharge of business in the office of the county officers whose salaries are fixed by this act."

It would appear to the court that under this act the salary board had no authority to appropriate a maximum sum for clerk hire where no clerk had been engaged or designated by the prothonotary.

The act provides, in section 4, that the "deputies and clerks authorized by the salary board shall be paid for their services by fixed and specific salaries."

This language would indicate that a clerk must be appointed and named, and the salary for such clerk must be "fixed and specific." This means, settled, established and firm. According to Webster's Dictionary, "specific" means, tending to specify and make particular, definite, limited and precise.

This is further emphasized by directing the salary to be paid to said clerk semi-monthly.

In the communication of Mr. Grenell to the salary board on Jan. 5, 1924, he said: "At certain times it is very necessary to have additional help, and for this purpose I have been paying my son, V. L. Grenell, approximately $500 per year, at a daily wage of $5. I request that this arrangement be continued with a maximum allowance of $500 for extra help. In this way I can get along without a full-time clerk, whose salary would necessarily be more than $500."

While this arrangement as to the services of a clerk suggested by Mr. Grenell, in our judgment, was most economical for the county, yet it would not literally comply with the language of the statute authorizing "fixed and specific salaries" to be made.

There is no doubt about the fact that a clerk should be employed in the offices of the Prothonotary and Clerk of Courts of Oyer and Terminer and Quarter Sessions when our courts are in session, and some satisfactory arrangement should be made to meet this condition for the convenience and accommodation of the public.

This matter of hiring a clerk was not passed on by the salary board. We, therefore, suggest that this matter be taken up by the prothonotary and the salary board and definitely determined by the salary board.

The salary board has heard the evidence and is now in possession of all the facts sufficient to do complete justice to all concerned.

As to the appeal from the action of the salary board in fixing the compensation of Marian D. Fellbush as deputy to the said Grenell, we find that the said Grenell could not appeal from the action of the salary board in fixing the salary of Miss Fellbush as his deputy, as she is the only one who could be "dissatisfied" with the action of the salary board.

For the reasons stated in this opinion, we dismiss the appeal in this case.